## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

BANK OF AMERICA, N.A., for itself and
as successor to LASALLE BANK
NATIONAL ASSOCIATION
135 S. LaSalle Street, Suite 1025
Chicago, IL 60603,

                          Plaintiff,

vs.

PRO-ONSITE TECHNOLOGIES, LLC,
n/k/a P & O TECHNOLOGIES LLC
an Ohio limited liability company
c/o Richard T. Brunsman, Jr., Statutory
Agent
4623 Wesley Ave., Suite P
Cincinnati, OH 45212

PRO-ONSITE TECHNOLOGIES, LLC,
a Georgia limited liability company
c/o Dennis Hanna, Registered Agent
1221 Powers Ferry
Marietta, GA 30067

POS HOLDINGS LLC
c/o KMK Service Corp., Statutory Agent
One East Fourth St., Suite 1400
Cincinnati, OH 4202

RICHARD T. BRUNSMAN, JR.
2565 Shaker Village Drive
North Bend, OH 45052

CASE NO. 1:10cv013

JUDGE Dlott

**VERIFIED COMPLAINT FOR
JUDGMENT ON NOTES AND
SECURITY INTERESTS, FOR
DAMAGES FROM FRAUD, FOR
APPOINTMENT OF RECEIVER, AND
FOR INJUNCTIVE RELIEF**

FIRST FINANCIAL BANK, NA
300 High Street
Hamilton, OH 45011

and

WESBANCO BANK, INC.
One Bank Plaza
Wheeling, WV 26003

                        Defendants.

Now comes Plaintiff, Bank of America, N.A., for itself and as successor to LaSalle Bank National Association ("Bank of America"), by and through counsel, and alleges for its Complaint against Defendants Pro-Onsite Technologies, LLC, n/k/a P & O Technologies, LLC ("Pro-Onsite"), POS Holdings LLC ("POS"), Richard T. Brunsman, Jr. ("Brunsman"), First Financial Bank, NA ("First Financial"), and WesBanco Bank, Inc. ("WesBanco") as follows:

## GENERAL ALLEGATIONS

1.     Bank of America is a national banking association with a place of business at 135 S. LaSalle Street, Suite 1025, Chicago, IL 60603, and, as of October 1, 2007, it is the successor to LaSalle Bank National Association. Bank of America is a citizen of Charlotte, North Carolina, where its principal place of business is located and its most recent articles of association were completed.

2.     Defendant, Pro-Onsite is, upon information and belief, an Ohio limited liability company with its principal place of business at 5717 Glenway Ave., Cincinnati, OH 45238, and/or at 2565 Shaker Village Drive, North Bend, Ohio 45052. According to the records filed with the Ohio Secretary of State, Pro-Onsite was originally registered in Ohio on March 6, 2001, it changed its name to P & O Technologies, LLC on August 28, 2006, and its Ohio statutory

agent is Richard T. Brunsman, Jr., at the address of 4623 Wesley Ave., Suite P, Cincinnati, OH 45212. Copies of these Secretary of State filings are attached hereto as Exhibit 1.

3.      In addition, however, the records filed with the Georgia Secretary of State reflect that "Pro-Onsite Technologies, LLC" is a Georgia limited liability company, registered in that state on January 16, 2003. Those records further reflect that the registered agent for this entity is Dennis Hanna, 1221 Powers Ferry, Marietta, GA 30067.    Finally, the Georgia records reflect that this entity was administratively dissolved on May 16, 2008, but that it was reinstated on December 4, 2008, pursuant to an application for reinstatement that appears to have been executed by Defendant Brunsman. Copies of these Secretary of State filings are attached hereto as Exhibit 2. It is unknown whether and to what extent Defendant Pro-Onsite and this Georgia company are in fact that same, and/or whether assets have been transferred, improperly or otherwise, between them. The entities identified in paragraphs 2 and 3 herein shall both be referred to as "Pro-Onsite," unless otherwise indicated.

4.      Defendant, POS is, upon information and belief, an Ohio limited liability company with its principal place of business at 2565 Shaker Village Drive, North Bend, Ohio 45052. Its Ohio statutory agent is KMK Service Corp., at the address of One East Fourth St., Suite 1400, Cincinnati, OH 4202, and the filings reflect that it was originally registered on June 24, 2005. Copies of these Secretary of State filings are attached hereto as Exhibit 3.

5.      Defendant, Richard T. Brunsman, Jr. ("Brunsman") is, upon information and belief, an Ohio citizen and resident with an address of 2565 Shaker Village Drive, North Bend, Ohio 45052.

6.      Upon information and belief, First Financial is a national bank with its main office located at 300 High Street, Hamilton, OH 45011. First Financial is named as a defendant

herein solely because it may claim an interest in some of the assets that are the subject of this action by reason of a UCC financing statement filed in Ohio on August 8, 2006 against Pro-Onsite.

7.     Upon information and belief, WesBanco is a West Virginia bank with its main office located at One Bank Plaza, Wheeling, WV 26003.  WesBanco is named as a defendant herein solely because it may claim an interest in some of the assets that are the subject of this action by reason of a UCC financing statement filed in Ohio on March 4, 2009 against POS Holdings, LLC.

<u>Jurisdiction and Venue</u>

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of North Carolina, and the Defendants are citizens of Ohio and Georgia.  The amount in controversy exceeds Seventy Five Thousand Dollars and no/100 ($75,000.00).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (i) the Southern District of Ohio is where one of the Pro-Onsite entities is based, as are Defendants POS and Brunsman, (ii) the Southern District of Ohio is where, upon information and belief, the majority of the property that is the subject of this action is located, and (iii) each of the Defendants is subject to personal jurisdiction in this Court.

<u>The Bank of America Loans</u>

10.     On or about January 21, 2003, Pro-Onsite and Bank of America entered into a Business Loan Agreement (the "2003 Loan Agreement") regarding their lending relationship.  A true and accurate copy of this agreement is attached hereto as Exhibit 4.  The 2003 Loan Agreement was executed by Defendant Brunsman as Chief Executive Officer of Pro-Onsite, in which it is represented that  Pro-Onsite is an Ohio company.

4

11.     At the time of the January 21, 2003 Loan Agreement, Bank of America made a loan to Pro-Onsite in the original principal amount of Five Hundred Thousand Dollars ($500,000.00).  A copy of the January 21, 2003 Note ("Note 273") is attached hereto as Exhibit 5.

12.     Also on or about January 21, 2003, and in order to secure its obligations to Bank of America under Note 273 (and any renewals, extensions, modifications and substitutions thereof), Pro-Onsite executed and entered into a certain Commercial Security Agreement, whereby Pro-Onsite granted a continuing security interest to Bank of America in, among other things, all of its inventory, chattel paper, accounts, equipment and general intangibles.  A true and accurate copy of the Security Agreement is attached hereto as Exhibit 6.

13.     In connection with the 2003 Loan Agreement, the 2003 Security Agreement and Note 273, Defendant Pro-Onsite provided the Bank with a Limited Liability Company Resolution to Borrow/Grant Collateral, executed by Defendant Brunsman, alleging among other things that Pro-Onsite is a validly formed Ohio limited liability company.  A copy of this Resolution is attached hereto as Exhibit 7.

14.     On January 15, 2003, less than a week before the Bank entered into the 2003 Loan Agreement and Note 273 and a day before the Georgia company of the same name was registered, the Bank verified that Pro-Onsite was an Ohio limited liability company and not a Georgia company.  A copy of the search results is attached hereto as Exhibit 8.

15.     Shortly thereafter, the Bank was advised or learned that Pro-Onsite was going to proceed as a Georgia company.  The Bank therefore filed a UCC-1 financing statement in Georgia on or about January 29, 2003, a true copy of which is attached hereto as Exhibit 9.

16.     An unknown person, without authority to do so, purported to file a termination of the UCC-1 on or about March 8, 2005, but the Bank filed a continuation of the 2003 UCC-1 on November 30, 2007; a true copy of that documentation is attached hereto as Exhibit 10 and 11 respectively.  The Bank subsequently filed another UCC-1 on or about November 21, 2006, a true copy of which is attached hereto as Exhibit 12.

17.     Note 273 was subsequently renewed, extended, modified and substituted by a Promissory Note dated August 8, 2005 in the original principal amount of Six Hundred Thousand Dollars ($600,000.00), a true and accurate copy of which is attached hereto as Exhibit 13.  Note 273 has since been extended by, among other things, letter dated October 17, 2008 (a true copy of which is part of Exhibit 13).

18.     Also on August 8, 2005, Pro-Onsite executed another Commercial Security Agreement in favor of the Bank, granting another lien on all of its assets.  A true copy of the 2005 Commercial Security Agreement is attached hereto as Exhibit 14.

19.     In connection with the renewal of Note 273, Pro-Onsite executed another Limited Liability Company Resolution to Borrow/Grant Collateral on August 8, 2005, in which Pro-Onsite represented, among other things, that it was a validly existing Georgia limited liability company, and which was executed by Defendant Brunsman, as CEO.  A true copy of this resolution is attached hereto as Exhibit 15.  The Bank verified this incorporation a few days before this; a true copy of the search results dated August 5, 2005 is attached hereto as Exhibit 16.

20.     Note 273 was converted into a line of credit, with a maximum availability of Six Hundred Thousand Dollars and no/100 ($600,000.00) pursuant to a Loan Agreement executed by

Pro-Onsite and the Bank as of November 16, 2007 (the "2007 Loan Agreement").   A true copy of the Loan Agreement is attached hereto as Exhibit 17.

21.     In connection with the 2007 Loan Agreement, Pro-Onsite executed another resolution, representing that it is a limited liability company under the laws of Georgia.  A true copy of this resolution is attached hereto as Exhibit 18.  This registration was confirmed by search results obtained several days in advance, a true copy of which is attached hereto as Exhibit 19.

22.     Note 273 is not the only loan that Pro-Onsite obtained from Bank of America.

23.     On or about November 16, 2006, Pro-Onsite obtained a loan in the original principal amount of Seven Hundred and Fifty Seven Thousand, Five Hundred and Ten Dollars and no/100 ($757,510.00), pursuant to a Loan Agreement ("Note 299") of that date (this document constitutes the promissory note by its terms).   A true copy of Note 299, with an amendment thereof, is attached hereto as Exhibit 20.

24.     In connection with Note 299, Pro-Onsite executed another Security Agreement in favor of the Bank and another resolution, confirming that it is a Georgia limited liability company.  Copies of the Security Agreement and resolution are attached hereto as Exhibits 21 and 22, respectively.   Search results obtained several days before execution confirmed Pro-Onsite's status as a Georgia company; a true copy of this search result is attached hereto as Exhibit 23.

25.     Pro-Onsite obtained other loans from the Bank as well, which obligations have since either been replaced or otherwise satisfied.

26.     Sometime after the execution of Note 299, during 2007, the Bank was advised or learned that Pro-Onsite was going to proceed as an Ohio company under the name "P & O Technologies."

27.     In connection with an extension of one of the Notes, Pro-Onsite, using the name "P & O Technologies," executed another Security Agreement in favor of the Bank on December 15, 2008, thereby granting the Bank a lien on all of its assets.  A true copy of the  2008 Security Agreement is attached hereto as Exhibit 24, and a true copy of the Bank's UCC filing in Ohio is attached hereto as Exhibit 25.

28.     Without authority or permission from the Bank, Defendant Brunsman caused a UCC Amendment – Termination to be filed with the Ohio Secretary of State on or about November 11, 2009, thereby wrongfully purporting to terminate the Bank's lien interest on Pro-Onsite's assets.

29.     In connection with the 2008 Security Agreement, Pro-Onsite executed additional resolutions on December 16, 2008 and December 17, 2008, representing, among other things, that it was validly existing in Ohio.  True copies of these resolutions are attached hereto as Exhibits 27 and 28, respectively.

30.     Defendant Brunsman executed continuing, unlimited guaranties of all of Pro-Onsite's obligations to the Bank on January 21, 2003, September 17, 2004, August 8, 2005 and November 16, 2006.  True copies of these guaranties (the "Bank of America Guaranties") are attached to as Exhibits 29, 30, 31 and 32, respectively.

31.     Note 273 is in default because, among other things, Pro-Onsite has failed to make all of the required payments due thereunder.  As of December 23, 2009, the total amount due

under Note 273 is $595,639.96, consisting of principal in the amount of $595,317.35 and accrued interest in the amount of $322.61. Interest continues to accrue at the per diem rate of $53.74.

32.     Note 299 in default because, among other things, Pro-Onsite has failed to make all of the required payments due thereunder. As of December 23, 2009, the total amount due under Note 299 is $182,427.52, consisting of principal in the amount of $177,303.09 and accrued interest in the amount of $5,124.43. Interest continues to accrue at the per diem rate of $36.94.

33.     Pro-Onsite is therefore obligated to the Bank for the sums due under Note 273 and Note 299.

34.     Pursuant to the Bank of America Guaranties, Defendant Brunsman is obligated to the Bank for the sums due under Note 273 and Note 299.

35.     Because of the fraud alleged herein, the Bank is concerned that its collateral, if any even exists, may be further secreted or diverted should it provide notice of default and therefore, it has not done so.

<u>The LaSalle Bank Loans</u>

36.     Before LaSalle Bank merged into Bank of America, LaSalle had a lending relationship with Defendants POS and Brunsman.

37.     Specifically, POS and the Bank executed a Business Loan Agreement dated August 24, 2005, in which POS represented, among other things, that it was a limited liability company under the laws of Illinois. A true copy of this Loan Agreement is attached hereto as Exhibit 33.

38.     Research indicates that contrary to this representation, POS was not incorporated under the laws of Illinois.

39. At the time of the August 24, 2005 Loan Agreement, the Bank made a loan to POS in the original principal amount of Seven Hundred and Fifty Thousand Dollars and no/100 ($750,000.00), and POS executed a Promissory Note that date. Thereafter, this obligation was increased to the original principal amount of One Million Dollars and no/100 ($1,000,000), and then extended several times. Copies of the original note, the increased note, and several extensions thereof ("Note 91"), are attached hereto as Exhibit 34.

40. Also at the time of the August 24, 2005 Loan Agreement, POS executed a Commercial Security Agreement, thereby granting the Bank a lien upon all of its assets. A true copy of the Security Agreement is attached hereto as Exhibit 35.

41. POS also simultaneously executed a Limited Liability Company Resolution to Borrow/Grant Collateral, which was executed by Defendant Brunsman as its manager, in which POS represented, among other things, that it was an Illinois limited liability company. A true copy of this resolution is attached hereto as Exhibit 36.

42. Based upon the representations of POS, the Bank filed a UCC-1 financing statement with the Illinois Secretary of State's office on September 15 2005, as is reflected in the online record attached hereto as Exhibit 37.

43. POS also borrowed the original principal sum of Five Hundred Thousand Dollars and no/100 ($500,000.00) from the Bank, and executed a Promissory Note dated August 2, 2006. A true copy of this note ("Note 75") is attached hereto as Exhibit 38.

44. POS also obtained another loan from the Bank in the original principal sum of Five Hundred Thousand Dollars and no/100 ($500,000.00), and executed a Promissory Note dated June 21, 2007. A true copy of this note ("Note 83") is attached hereto as Exhibit 39.

45.    In connection with Note 83, POS also executed a Business Loan Agreement in which it represented, among other things, that it is a validly existing Ohio limited liability company (rather than an Illinois company, as represented previously).  A true copy of this Loan Agreement, dated June 21, 2007, is attached hereto as Exhibit 40.

46.    Also in connection with Note 83, POS executed another Commercial Security Agreement in favor of the Bank dated June 21, 2007, thereby granting the Bank a lien upon all of POS' assets.  A true copy of this Security Agreement is attached hereto as Exhibit 41.

47.    Further in connection with Note 83, POS executed a Limited Liability Company Resolution to Borrow/Grant Collateral dated June 21, 2007, in which it represented, among other things, that it is a validly existing Ohio limited liability company, and which was signed by Defendant Brunsman as its manager.  A true copy of this resolution is attached hereto as Exhibit 42.

48.    Defendant Brunsman executed continuing, unlimited guaranties of all of POS's obligations to the Bank on August 24, 2005, August 2, 2006, and June 21, 2007.  True copies of these guaranties (the "LaSalle Guaranties") are attached to as Exhibits 43, 44, and 45, respectively.

49.    Note 91 is in default because, among other things, POS has failed to make all of the required payments due thereunder.  As of December 23, 2009, the total amount due under Note 91 is $700,987.96, consisting of principal in the amount of $689,401.98, accrued interest in the amount of $7,826.37, and late fees in the amount of $3,759.61.  Interest continues to accrue at the per diem rate of $148.22.

50.    Note 75 is in default because, among other things, POS has failed to make all of the required payments due thereunder.  As of December 23, 2009, 2009, the total amount due

under Note 75 is $219,695.97, consisting of principal in the amount of $211,252.65, accrued interest in the amount of $6,399.32 and late charges in the amount of $2,044.00.  Interest continues to accrue at the per diem rate of $48.24.

51.     Note 83 in default because, among other things, POS has failed to make all of the required payments due thereunder.  As of December 23, 2009, the total amount due under Note 83 is $231,117.96, consisting of principal in the amount of $229,360.17 and accrued interest in the amount of $1,757.79.  Interest continues to accrue at the per diem rate of $51.99.

52.     POS is therefore obligated to the Bank for the sums due under Note 91, Note 75 and Note 83.

53.     Pursuant to the LaSalle Guaranties, Defendant Brunsman is obligated to the Bank for the sums due under Note 91, Note 75 and Note 83.

54.     Because of the fraud alleged herein, the Bank is concerned that its collateral, if any even exists, may be further secreted or diverted should it provide notice of default and therefore, it has not done so.

<u>Additional Allegations Concerning Fraud</u>

55.     In addition to the fraudulent conduct involving the formation of Pro-Onsite and POS in various states, the Bank's files contain additional instances involving fraud.

56.     Specifically, on or about June 21, 2007, as additional collateral for Note 83, Defendant Brunsman executed an Assignment of Life Insurance Policy as Collateral and thereby assigned the Lincoln Financial Group life insurance policy number 23-07948064, in the amount of $425,000, to the Bank (LaSalle at the time).  A true copy of the Assignment is attached hereto as Exhibit 46.

57.     In support of the Assignment, Defendant Brunsman provided the Bank with a Lincoln Financial Group Quarterly Statement for the policy dated March 31, 2007, showing that the policy had a specified amount of $425,000, and a net cash surrender value of $853,696.83. A true copy of this statement is attached hereto as Exhibit 47.

58.     Because of concerns raised by some of the other issues identified herein, the Bank sought and obtained a copy of the March 31, 2007 statement from Lincoln Financial. The actual statement obtained from the company shows that the specified amount of insurance is only $275,000, and that the net cash surrender value on March 31, 2007 was only $37,929.12. A true copy of this statement is attached hereto as Exhibit 48. Defendant Brunsman, or someone on his behalf or at his direction, falsified the statement provided to the Bank.

59.     Similarly, Defendant Brunsman provided both Bank of America and LaSalle Bank, back when they were separate banks, with accounts receivable agings for Pro-Onsite and POS, respectively, as of July 11, 2005. In reviewing the files of both banks, it is evident that Defendant Brunsman used the *identical* accounts receivable report for both Pro-Onsite and POS. Attached hereto as exhibits 49 and 50, respectively, are the reports submitted.

60.     Defendant Brunsman also provided both Bank of America and LaSalle Bank, back when they were separate banks, with tax returns for Pro-Onsite and POS, respectively. For years 2003, 2004 and 2005, the returns for Pro-Onsite and POS are virtually identical. The 2003 return for Pro-Onsite is attached hereto as Exhibit 51, the 2003 return for POS is attached hereto as Exhibit 52, the 2004 tax return for Pro-Onsite is attached hereto as Exhibit 53, the 2004 tax return for POS is attached hereto as Exhibit 54, the 2005 tax return for Pro-Onsite is attached hereto as Exhibit 55, and the 2005 tax return for POS is attached hereto as Exhibit 56.

61. The tax returns also show some discrepancies that further demonstrate they are fraudulent. For example, the 2003 return for Pro-Onsite says that it was incorporated on 1/1/97, but the 2004 return says it was incorporated on 1/1/95 (coincidentally, this is the same date that the POS returns show as its date of incorporation). Neither of these dates match the Secretary of State records identified above.

62. Over the years, Pro-Onsite also used different Employer Identification Numbers ("EIN"). The EIN used in Pro-Onsite's returns for 2003 and 2004 ends with 6273, but the EIN used in its returns for 2005 and 2006 ends with 0742. *See* Exhibits 51, 53, 55 and 57 attached hereto (all but the last four digits in all EIN and Social Security numbers have been redacted in accordance with applicable rules).

63. According to the 2005 returns, both Pro-Onsite and POS had exactly $14,023,130 in gross receipts, both had exactly $9,093,557 in cost of goods sold, and so both earned gross profit of exactly $4,929,573. While there are some minor differences in some of the balance sheet items reported, it is obvious that one or both of these returns is wholly fraudulent, and was submitted solely to entice Bank of America to continue making loans to Pro-Onsite and to entice LaSalle Bank to begin making loans to POS Holdings.

64. The 2006 tax returns for Pro-Onsite and POS, which were prepared after Bank of America acquired LaSalle, do contain some differences at first blush. True copies of the 2006 returns are attached hereto as Exhibits 57 and 58, respectively. Upon closer investigation, however, the 2006 returns show continued overlap. For example, both returns show the same gross profit, $5,255,931. However, this sum on the POS return is wrong; subtracting the two prior lines is $6,411,501, not $5,255,931. Enough other numbers on the returns are precisely

14

identical that it strains credulity to believe that the returns accurately reflect the financial condition of two distinct companies.

65.     Defendant Brunsman also submitted personal tax returns to Bank of America and LaSalle, before the Banks merged.  In the returns he submitted to Bank of America, Brunsman shows income from Pro-Onsite, and in the returns he submitted to LaSalle, Brunsman shows that the exact same income is from POS.  True copies of Brunsman's returns submitted to Bank of America and LaSalle Bank for years 2003, 2004 and 2005 are attached hereto as Exhibits 59, 60, 61, 62 63 and 64, respectively.

66.     In his two 2006 tax returns submitted to Bank of America and LaSalle respectively, Brunsman again shows income from Pro-Onsite on the return provided to Bank of America and from POS on the return provided to LaSalle.  True copies of the 2006 tax returns are attached hereto as Exhibits 65 and 66.  In addition, however, the two returns also contain some differences in the other companies that Brunsman reported.  In the Pro-Onsite version, he also show income from "RBDB Investments, LLC" but in the POS version, RBDB Investments is not identified and instead, "Onsite Ideacom, LLC" is shown.  According to the two different 2006 tax returns, RBDB Investments, LLC and Onsite Ideacom, LLC both have the exact same EIN (though a portion of both has been redacted to comply with redaction rules).  And, while the name of the same accountant is typed on both returns, the signatures bear no resemblance to one another.

67.     Brunsman also provided personal financial statements to Bank of America and LaSalle prior to the merger of the banks.   The ones provided to Bank of America are attached hereto as Exhibit 67, and the ones provided to LaSalle are attached hereto as Exhibit 68.  As with the tax returns he provided to the banks, financial statements provided to each bank for the same

period do not match one another. For example, on July 13, 2005, Brunsman represented that he was, and had been for 10 years, employed by Pro-Onsite in Georgia. Merely two weeks later, on August 1, 2005, Brunsman represented to LaSalle that he was, and had been for 10 years, employed by POS in Illinois.

68.     As noted above, Brunsman is responsible for terminating one of the Bank's UCC filings, and may be responsible for another. Attached hereto as Exhibit 69 is a true copy of a UCC search in Ohio obtained by the Bank with respect to the name "P & O Technologies, LLC" (which, as noted above, is the new name for Pro-Onsite), the last page of which shows that on November 11, 2009, Brunsman filed a UCC termination with respect to the Bank's UCC against Pro-Onsite. Brunsman did not have authority to file that UCC termination.

69.     In addition, a review of the UCC filings with respect to all of the companies in various jurisdictions show a pattern of filing financing statements followed by the filing of termination statements, where the propriety of the termination statements are suspect because the banks in question have filed continuation statements thereafter. In other words, if the banks authorized and knew of the termination, there would be no reason to file the continuations. Attached hereto as Exhibit 70 is a true copy of the UCC search in Ohio for Pro-Onsite, Exhibit 71 is a true copy of the UCC search in Ohio for POS, and Exhibit 72 is a true copy of the UCC search in Georgia for Pro-Onsite.

70.     As stated above, Bank of America acquired LaSalle Bank effective as of October 1, 2007. From that date until the fall of 2009, the Pro-Onsite and POS loans continued to be handled by different loan officers in different areas of the combined Bank, so that the fraud being committed was not discovered. In early fall 2009, the Pro-Onsite and POS loans were transferred to the same loan officer since all of the loans had been experiencing payment

difficulties. The loan officer's initial review of the files suggested that there were some irregularities in some of the documents so the Bank retained counsel to begin evaluating the files, and obtained UCC reports. Those reports were obtained in late November, 2009, showing the unauthorized release of the Bank's UCC filing by Defendant Brunsman. The Bank therefore initiated an extensive internal review of all of its files concerning Pro-Onsite and POS, thereby discovering the fraud asserted herein.

*Credit Card Obligation*

71. In addition to the obligations identified above, Pro-Onsite also has a credit card with a balance due of $37,586.23 as of November 19, 2009. A true copy of the Bank's record showing this amount due is attached hereto as Exhibit 73.

72. Pursuant to the terms of the Business Card Agreement, the credit card obligation is in default by reason of the defaults on the notes identified herein, and therefore, the credit card obligation is due and payable in full. A true copy of the Business Card Agreement is attached hereto as Exhibit 74.

## COUNT I
### ACTION ON NOTE 273

73. The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

74. As set forth above, Pro-Onsite executed and delivered to the Bank Note 273, whereby it promised to pay the Bank the original principal sum of $600,000, plus interest as is set forth therein.

75. The Bank is the holder of Note 273.

76. Pro-Onsite is in default of its obligations to the Bank under Note 273 for, among other things, failing to pay the amounts due to the Bank pursuant to the terms of the Note.

77.     The Note provides that upon the occurrence of an event of default, the Bank may require immediate payment of all amounts due and owing under the Note.

78.     The Note entitles the Bank to recover from Pro-Onsite expenses incurred in the enforcement of the terms of the Note including, but not limited to, reasonable attorneys' fees.

79.     The Bank has declared all such amounts to be due.

80.     As of December 23, 2009, the total amount due under Note 273 is $595,639.96, consisting of principal in the amount of $595,317.35 and accrued interest in the amount of $322.61.  Interest continues to accrue at the per diem rate of $53.74.

81.     The Bank is therefore entitled to judgment against Pro-Onsite on Note 273 in such amount, plus attorneys' fees, costs and expenses.

<u>COUNT II</u>
**ACTION ON NOTE 299**

82.     The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

83.     As set forth above, Pro-Onsite executed and delivered to the Bank Note 299, whereby it promised to pay the Bank the original principal sum of $757,510, plus interest as is set forth therein.

84.     The Bank is the holder of Note 299.

85.     Pro-Onsite is in default of its obligations to the Bank under Note 299 for, among other things, failing to pay the amounts due to the Bank pursuant to the terms of the Note.

86.     The Note provides that upon the occurrence of an event of default, the Bank may require immediate payment of all amounts due and owing under the Note.

87.     The Note entitles the Bank to recover from Pro-Onsite expenses incurred in the enforcement of the terms of the Note including, but not limited to, reasonable attorneys' fees.

18

88.     The Bank has declared all such amounts to be due.

89.     As of December 23, 2009, the total amount due under Note 299 is $182,427.52, consisting of principal in the amount of $177,303.09 and accrued interest in the amount of $5,124.43.  Interest continues to accrue at the per diem rate of $36.94.

90.     The Bank is therefore entitled to judgment against Pro-Onsite on Note 299 in such amount plus attorneys' fees, costs and expenses.

## COUNT III
## ACTION ON NOTE 91

91.     The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

92.     As set forth above, POS executed and delivered to the Bank Note 91, whereby it promised to pay the Bank the original principal sum of $750,000, plus interest as is set forth therein.

93.     The Bank is the holder of Note 91.

94.     POS is in default of its obligations to the Bank under Note 91 for, among other things, failing to pay the amounts due to the Bank pursuant to the terms of the Note.

95.     The Note provides that upon the occurrence of an event of default, the Bank may require immediate payment of all amounts due and owing under the Note.

96.     The Note entitles the Bank to recover from POS expenses incurred in the enforcement of the terms of the Note including, but not limited to, reasonable attorneys' fees.

97.     The Bank has declared all such amounts to be due.

98.     As of December 23, 2009, the total amount due under Note 91 is $700,987.96, consisting of principal in the amount of $689,401.98, accrued interest in the amount of

$7,826.37, and late fees in the amount of $3,759.61. Interest continues to accrue at the per diem rate of $148.22.

99.     The Bank is therefore entitled to judgment against POS on Note 91 in such amount plus attorneys' fees, costs and expenses.

### COUNT IV
### ACTION ON NOTE 75

100.     The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

101.     As set forth above, POS executed and delivered to the Bank Note 75, whereby it promised to pay the Bank the original principal sum of $500,000, plus interest as is set forth therein.

102.     The Bank is the holder of Note 75.

103.     POS is in default of its obligations to the Bank under Note 75 for, among other things, failing to pay the amounts due to the Bank pursuant to the terms of the Note.

104.     The Note provides that upon the occurrence of an event of default, the Bank may require immediate payment of all amounts due and owing under the Note.

105.     The Note entitles the Bank to recover from POS expenses incurred in the enforcement of the terms of the Note including, but not limited to, reasonable attorneys' fees.

106.     The Bank has declared all such amounts to be due.

107.     As of December 23, 2009, the total amount due under Note 75 is $219,695.97, consisting of principal in the amount of $211,252.65, accrued interest in the amount of $6,399.32 and late charges in the amount of $2,044.00. Interest continues to accrue at the per diem rate of $48.24.

108.    The Bank is therefore entitled to judgment against POS on Note 75 in such amount plus attorneys' fees, costs and expenses.

## COUNT V
## ACTION ON NOTE 83

109.    The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

110.    As set forth above, POS executed and delivered to the Bank Note 83, whereby it promised to pay the Bank the original principal sum of $500,000, plus interest as is set forth therein.

111.    The Bank is the holder of Note 83.

112.    POS is in default of its obligations to the Bank under Note 83 for, among other things, failing to pay the amounts due to the Bank pursuant to the terms of the Note.

113.    The Note provides that upon the occurrence of an event of default, the Bank may require immediate payment of all amounts due and owing under the Note.

114.    The Note entitles the Bank to recover from POS expenses incurred in the enforcement of the terms of the Note including, but not limited to, reasonable attorneys' fees.

115.    The Bank has declared all such amounts to be due.

116.    As of December 23, 2009, the total amount due under Note 83 is $231,117.96, consisting of principal in the amount of $229,360.17 and accrued interest in the amount of $1,757.79.  Interest continues to accrue at the per diem rate of $51.99.

117.    The Bank is therefore entitled to judgment against POS on Note 83 in such amount plus attorneys' fees, costs and expenses.

## COUNT VI
## ACTION ON CREDIT CARD OBLIGATION

21

118.     The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

119.     As set forth above, Pro-Onsite has had use of a credit card on which there is a balance that is presently due and owing.

120.     The Bank is the holder of the credit card obligation.

121.     Pro-Onsite is in default of its obligations to the Bank under the credit card agreement for, among other things, failing to pay the amounts due to the Bank pursuant to the terms of its other Notes.

122.     The credit card agreement provides that upon the occurrence of an event of default, the Bank may require immediate payment of all amounts due and owing under the credit card.

123.     The Bank has declared all such amounts to be due.

124.     As of November 19, 2009, the total amount due under the credit card is $37,586.23. Interest continues to accrue on the outstanding balance.

125.     The Bank is therefore entitled to judgment against Pro-Onsite on the credit card obligation in such amount plus attorneys' fees, costs and expenses.

**COUNT VII**
**ACTION ON GUARANTIES**

126.     The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

127.     As set forth above, Defendant Brunsman executed guaranties by which he unconditionally guaranteed and promised to pay to the Bank any and all obligations of Pro-Onsite and POS to the Bank, including but not limited to Note 273, Note 299, Note 91, Note 75, and Note 83.

128.    The Notes are in default.

129.    By virtue of the guaranties, Defendant Brunsman owes the Bank the principal, accrued interest, late charges, costs, expenses and continuing interest due under Note 273, Note 299, Note 91, Note 75 and Note 83, as set forth above.

130.    The Bank is entitled to judgment against Defendant Brunsman in such amounts plus attorneys' fees, costs and expenses.

### COUNT VIII
### FORECLOSURE OF SECURITY INTERESTS – PRO-ONSITE

131.    The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

132.    As set forth above, Pro-Onsite granted the Bank a security interest in all of its assets, which security interest was properly perfected by the filing of a UCC financing statement.

133.    The security interest granted to the Bank by Pro-Onsite constitutes the first and best lien upon the collateral identified therein.

134.    Pro-Onsite's failure to satisfy its obligations to the Bank constitutes a default under the security agreements identified above.

135.    Because of Pro-Onsite's default upon the Notes, the Bank is entitled, under the terms of the security agreements, to exercise its rights as a secured party with respect to the collateral identified therein, which rights include collecting revenues upon and selling or otherwise disposing of the collateral.

### COUNT IX
### FORECLOSURE OF SECURITY INTERESTS – POS

136.    The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

137.    As set forth above, POS granted the Bank a security interest in all of its assets, which security interest was properly perfected by the filing of a UCC financing statement, which financing statement was filed in Illinois based upon the fraudulent misrepresentations of POS.

138.    The security interest granted to the Bank by POS constitutes valid lien upon the collateral identified therein.

139.    POS' failure to satisfy its obligations to the Bank constitutes a default under the security agreements identified above.

140.    Because of POS' default upon the Notes, the Bank is entitled, under the terms of the security agreements, to exercise its rights as a secured party with respect to the collateral identified therein, which rights include collecting revenues upon and selling or otherwise disposing of the collateral.

## COUNT X
## CLAIM FOR FRAUD

141.    The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

142.    As is more fully set forth above, in obtaining Note 273, Note 299, Note 91, Note 75 and Note 83, as well as modifications and extensions thereof, Defendants Pro-Onsite, POS and Brunsman made representations of material fact to the Bank regarding their corporation formation, their corporate identity, their assets and their financial condition.

143.    Those representations were material to the extension of credit.

144.    Those representations were made falsely, with knowledge of their falsity, and/or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

24

145.    Defendants Pro-Onsite, POS and Brunsman made those misrepresentations with the intent of misleading the Bank into relying on them.

146.    The Bank justifiably relied upon the misrepresentations, it has been injured as a result of that reliance, and the resulting injury was proximately caused by the reliance.

147.    The Bank is therefore entitled to compensatory and punitive damages, plus its attorneys' fees, in an amount to be proven at trial.

<u>COUNT XI</u>
**APPOINTMENT OF A RECEIVER**

148.    The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

149.    As is set forth above, Pro-Onsite is in default of its obligations under Note 273 and Note 299.

150.    Accordingly, the Bank is entitled to the appointment of a receiver for Pro-Onsite and all of its assets, as Pro-Onsite agreed in the various security agreements (*See* exhibits 6, 14, 21 and 24).

151.    As is set forth above, POS is in default of its obligations under Note 91, Note 75 and Note 83.

152.    Accordingly, the Bank is entitled to the appointment of a receiver for POS and all of its assets, as POS agreed in the various security agreements (*See* exhibits 35 and 41).

153.    In addition to the contractual right to the appointment of a receiver, the Bank is also entitled to the appointment of a receiver pursuant to O.R.C. § 2735.01.

154.    Section 2735.01 of the Ohio Revised Code provides that a receiver may be appointed, among other things, in a foreclosure action, where the secured party can demonstrate

that the mortgaged property is in danger of being lost, removed or materially injured, or in all other cases in which receivers have been appointed by the usages of equity.

155.    In this case, the fraud more fully set forth herein demonstrates that the Bank's collateral is in danger of being lost, removed or materially injured and that this case is an appropriate case for the appointment of receiver under equitable principles.

156.    Accordingly, a receiver should be appointed for Pro-Onsite and for POS, with full authority over their assets, including but not limited to authority to sell the assets, with all of the rights and powers set forth in the security agreements and as otherwise permitted by law.

## COUNT XII
## INJUNCTIVE RELIEF

157.    The Bank repeats and realleges the allegations contained in each of the preceding paragraphs above as if fully rewritten herein.

158.    Defendants Pro-Onsite, POS and Brunsman have been defrauding the Bank as is more fully set forth herein, by, among other things, wrongfully and without authority, terminating UCC statements and misrepresenting the location and quantity of assets.

159.    The Bank is entitled to temporary, preliminary and permanent injunctive relief, prohibiting said Defendants from further terminating UCC statements, from making misrepresentations concerning assets, from further using, disposing of and/or encumbering their assets and from otherwise further damaging the Bank.

**WHEREFORE**, Plaintiff Bank of America respectfully requests that this Court grant relief in its favor as follows:

A.      Upon Count I, judgment against Pro-Onsite on Note 273 in the amount of $595,639.96 as of December 23, 2009, consisting of principal in the amount of

$595,317.35 and accrued interest in the amount of $322.61, plus post-judgment interest in the per diem amount of $53.74, attorneys' fees, costs and expenses.

B.    Upon Count II, judgment against Pro-Onsite on Note 299 in the amount of $182,427.52 as of December 23, 2009, consisting of principal in the amount of $177,303.09 and accrued interest in the amount of $5,124.43, plus post-judgment interest in the per diem amount of $36.94, attorneys' fees, costs and expenses;

C.    Upon Count III, judgment against POS on Note 91 in the amount of $700,987.96 as of December 23, 2009, consisting of principal in the amount of $689,401.98, accrued interest in the amount of $7,826.37, and late fees in the amount of $3,759.61, plus post-judgment interest in the per diem amount of $148.22, attorneys' fees, costs and expenses;

D.    Upon Count IV, judgment against POS on Note 75 in the amount of $219,695.97 as of December 23, 2009, consisting of principal in the amount of $211,252.65, accrued interest in the amount of $6,399.32 and late charges in the amount of $2,044.00, plus post-judgment interest in the per diem amount of $48.24, attorneys' fees, costs, and expenses;

E.    Upon Count V, judgment against POS on Note 83 in the amount of $231,117.96 as of December 23, 2009, consisting of principal in the amount of $229,360.17 and accrued interest in the amount of $1,757.79, plus post-judgment interest in the per diem amount of $51.99, attorneys' fees, costs, and expenses;

F.    Upon Count VI, judgment against Pro-Onsite with respect to its credit card account in the amount then due and owing; as of November 19, 2009, the total amount due under the credit card was $37,586.23, plus continuing interest;

G. Upon Count VII, judgment against Brunsman upon his guaranties of Note 273, Note 299, Note 91, Note 75 and Note 83 in the amounts set forth above, plus post-judgment interest as set forth above, attorneys' fees, costs and expenses;

H. Upon Count VIII, judgment against Pro-Onsite and any other defendants with an interest in its assets, to foreclosure upon the Bank's security interest therein;

I. Upon Count IX, judgment against POS and any other defendants with an interest in its assets, to foreclose upon the Bank's security interest therein;

J. Upon Count X, judgment based upon fraud against Pro-Onsite, POS and Brunsman for compensatory and punitive damages, plus attorneys' fees, in an amount to be proven at trial;

K. Upon Count XI, judgment directing the appointment of a receiver for Pro-Onsite, POS and all of their assets;

L. Upon Count XII, judgment with injunctive relief, prohibiting Pro-Onsite, POS and Brunsman from committing further acts of fraud and from further using, disposing of and/or encumbering their assets and from otherwise further damaging the Bank; and

E. Upon all Counts, judgment in favor of the Bank for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Patricia B. Fugée (0070698)
Roetzel & Andress, LPA
One SeaGate, 17th Floor
Toledo, OH 43604
E-mail: pfugee@ralaw.com
Direct Dial: 419.254.5261
Facsimile: 419.242.0316

- and –

William P. Coley, II (_____)
Roetzel & Andress
310 Chiquita Center
250 East Fifth Street
Cincinnati OH 45202
Email: bcoley@ralaw.com
Telephone: 513.361.8281
Fax: 513.361.0335
ATTORNEYS FOR PLAINTIFF BANK
OF AMERICA, N.A. FOR ITSELF AND
AS SUCCESSOR TO LASALLE BANK
NATIONAL ASSOCIATION

## VERIFICATION

COUNTY OF COOK )
) SS.
STATE OF ILLINOIS )

    I, Justin Kerstetter, being of full age and duly sworn, deposes and says that he is a Vice President Special Assets Group - Business Banking at Bank of America, that he has read the foregoing Verified Complaint, that the statements and allegations contained in the Verified Complaint are true based upon the information available to him, and that each of the exhibits are true copies of the originals of documents obtained either from the Bank's files or from the public records.

_____
Justin Kerstetter

SWORN to before me and subscribed in my presence this __11__ day of January, 2010.

_____
Notary Public
My Commission Expires: _____

143402 v_01 \ 063071.0229

```
"OFFICIAL SEAL"
KAREN PARRISH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES JULY 07, 2012
```