IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., for itself and as successor to LASALLE BANK NATIONAL ASSOCIATION, | : : : : | Case No. 1:10-cv-013 Chief Judge Susan J. Dlott |
| Plaintiff, | : : | ORDER GRANTING EMERGENCY MOTION FOR THE APPOINTMENT |
| v. | : : | OF A RECEIVER AND TEMPORARY RESTRAINING ORDER |
| PRO-ONSITE TECHNOLOGIES, LLC, n/k/a P&O TECHNOLOGIES, LLC, *et al.*, | : : : | |
| Defendants. | : : | |

This matter comes before the Court on Plaintiff's *Ex Parte* Emergency Motion for the Appointment of a Receiver and Temporary Restraining Order. Plaintiff Bank of America, N.A., for itself and as successor to LaSalle Bank National Association ("Bank" or "Plaintiff") seeks: (i) the appointment of a receiver for Defendants Pro-Onsite Technologies, LLC, n/k/a P & O Technologies, LLC (an Ohio limited liability company), Pro-Onsite Technologies, LLC (a Georgia limited liability company) (these two entities shall be referred together as "Pro-Onsite" unless otherwise indicated), and POS Holdings, LLC ("POS"); and (ii) entry of a temporary restraining order pursuant to Fed. R. Civ. P. 65(b)(1) against Richard T. Brunsman, Jr. ("Brunsman"), prohibiting him from further encumbering the assets of Pro-Onsite and POS, releasing any existing UCC filings, and other relief as is more fully set forth in the motion.

The Court held an *ex parte* hearing on this matter on January 13, 2010. Based on the evidence before the Court and the arguments set forth by counsel for Plaintiff, the Court finds as follows:

1

A. Pursuant to the terms of the various Security Agreements, more fully described in and attached to the Complaint herein, Defendants Pro-Onsite and POS consented to the appointment of a receiver in the event of default.

B. Defendants Pro-Onsite and POS are in default of their obligations to the Bank, as is reflected in the verified Complaint.

C. In addition, the Bank is entitled to the appointment of a receiver for Defendants Pro-Onsite and POS to preserve property that is in danger of being lost, removed, or materially injured and to prevent any further injury to Defendants Pro-Onsite and POS and their assets that is or may be caused by the conduct of Defendant Brunsman.

D. Counsel for Plaintiff made no attempt to notify Defendants prior to the filing of the underlying Motion because there is substantial risk that providing notice may cause Brunsman to further his efforts of secreting or damaging the Bank's collateral.

E. The Verified Complaint and authenticated exhibits thereto amply demonstrate that the Bank has a substantial likelihood of success on the merits of its claims that the loans, including but not limited to extensions and modifications thereof, were obtained by Defendants POS, Pro-Onsite and Brunsman, via fraud and/or fraudulent means;

F. The Verified Complaint and authenticated exhibits thereto amply demonstrate that absent the entry of injunctive relief, the Bank will suffer irreparable injury for which it has no adequate remedy at law, including but not limited to the loss of its status quo security interests in the assets of Pro-Onsite and POS, and that such relief will not cause any substantial harm to others but will instead preserve the value of those assets.

G. The public interest favors the granting of the injunctive relief herein by preserving

the system of security agreements, as well as prohibiting the commission of further fraudulent acts.

H.	Good cause has been shown, pursuant to Federal Civil Rule 65(b) for the entry of this Temporary Restraining Order against Defendant Brunsman.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.	Plaintiff's motion for the appointment of a receiver for Defendants Pro-Onsite (both the Ohio limited liability company and the Georgia limited liability company) and POS, and all of their assets wherever located, is hereby **GRANTED**.

2.	Alex Moglia, of the professional turnaround management firm Moglia Advisors, is hereby designated and appointed Receiver for Defendants Pro-Onsite and POS and all of the business operations and assets of those Defendants, including but not limited to all personal property owned by such Defendants wherever same may be located. Upon his acceptance, Mr. Moglia shall be the Receiver and shall have authority with respect to Defendants Pro-Onsite and POS and to their assets and of all of the proceeds obtained from such assets (collectively, the "Receivership Property").

3.	Neither the request for this Order, the failure to object to this Order, nor the taking of any action in conformity with this Order, or acceptance of any payments pursuant to this Order, shall in any way constitute a release of Defendants Pro-Onsite, POS, and/or Brunsman by the Bank, nor shall it constitute a waiver of any other remedy the Bank may have, nor an election of remedies, and the Bank shall be entitled to all of the remedies available to it prior to the institution of this proceeding.

4.	Should the Receivership established by this Order for any reason not be

completed, the parties shall have the priorities and positions in regard to the collateral that is the subject of their respective liens that they had prior to the entry of this Order, and nothing herein shall in any way constitute or be construed as a waiver of collateral, a waiver of priority, or a consent to substitution of collateral or a waiver of or an election of remedies.

5. The Receiver may resign his Receivership by giving thirty (30) days advance written notice to this Court approving this Order. Upon the providing of such notice, and submission by the Receiver of an accounting of the Receiver's duties hereunder, and funds held pursuant hereto, the Receiver shall be released and discharged from further obligations hereunder.

6. The Receiver may be removed upon the Order of the Court acting *sua sponte*, following notice and hearing, or upon motion of the Bank. For the purpose of this Order, notice and hearing shall mean notice to the Defendants herein and the Bank.

7. No bond shall be required of the Receiver.

8. The Receiver shall be compensated for his services hereunder in the amount of four hundred and ten dollars ($410.00) per hour, plus out of pocket expenses (but the Receiver shall be responsible for all clerical and general overhead costs). Such compensation shall be paid monthly from the proceeds of the Receivership Estate and/or from credit obtained from the Bank as authorized herein. The Receiver shall furnish the Bank monthly statements of the time devoted to this Receivership, and not less than every three months shall make application to the Court for approval, upon notice and hearing, of the compensation paid to him.

9. The Receiver shall maintain property and liability insurance respecting any property interest of the Defendants subject to the Receivership, to the extent that such property

has not theretofore been abandoned or otherwise disposed of by the Receiver.  The insurance policies which the Receiver will maintain shall afford insurance coverage of said property in such amounts as will adequately protect the security interest of the Receiver, the Bank and any other parties as their interest may appear in the Property.

    10.    The Receiver shall, and is hereby authorized to, perform the following duties:

- Identify and investigate the assets of Defendants Pro-Onsite and POS, including review of the books and records of each;

- Care for and maintain the Receivership Property;

- Upon motion to and order of the Court, sell the Receivership Property as expeditiously as is compatible with the best interests of the parties in interest, subject to approval of the Bank and on notice and hearing;

- Collect all rents and proceeds of the Receivership Property;

- Evaluate and either pursue, settle or abandon any claims of any of Defendants Pro-Onsite and POS against third parties, as the Receiver deems advisable, subject to approval of the Bank and on notice and hearing;

- Account for all Receivership Property received;

- Prepare a complete inventory of the Receivership Property;

- Keep records of receipts and of the disposition of money and Receivership Property;

- Report to the Court and the parties the financial condition of the Receivership Property and progress of administration;

- File any information required to be filed with any governmental unit charged with responsibility for collection or determination of tax arising out of the operation.

    11.    The Receiver may retain his own legal counsel, provided that the hourly rates do not exceed such counsel's regular hourly rate for comparable receivership work.

    12.    To assist him in fulfilling his obligations hereunder, the Receiver is authorized to

hire agents on the following conditions:

    (i)       Employees of Moglia Advisors at their usual and customary rates without Court approval, but after consultation with the Bank;

    (ii)      Employees of Defendants Pro-Onsite and POS at compensation rates not exceeding such employee's current compensation rate without Court approval, but after consultation with the Bank;

    (iii)     Security Guards to protect the Receivership Property without Court approval, but after consultation with the Bank;

    (iv)     Professionals to assist in the development and sale of the Receivership Property, without Court approval, but after consultation with the Bank;

    (v)      Accountants to assist in the preparation of tax returns in accordance with IRS requirements, without Court approval, but after consultation with the Bank;

    (vi)     Bank employees at no cost to the Receivership Estate without Court approval;

    (vii)    Legal counsel as set forth above, without Court approval;

    (viii)   All other agents upon Court approval after notice and hearing.

In selecting agents, the Receiver shall be mindful of minimizing the expenses of this proceeding as well as the competence of the agent for the position.

13. Defendants Pro-Onsite, POS and Brunsman are ordered as soon as possible to make fully available all of their books and records and bank statements regarding the Receivership Property to the Receiver and to furnish the Receiver with a listing of account debtors, addresses, and amounts owed, with respect to the Receivership Property, if any. The Receiver shall oversee the appropriate application of all receipts.

14. All proceeds from the sales of the Receivership Property are to be deposited in a Receiver Account, so as to oversee the cash collateral and proceeds in a manner consistent with this Order.

15. The Receiver may apply for and obtain, upon notice and hearing, advances upon credit of the Estate in Receivership with all priorities generally accorded to Receivers' Certificates in order to pay his fees and expenses.

16. The proceeds of Receivership Property received by the Receiver shall be held in trust until further order of the Court. The Bank may in its sole discretion make advances, or permit the Receiver's use of such proceeds, for payment of the following expenses pursuant to a budget to be agreed upon between the Receiver and the Bank:

   (i) utilities for real estate necessary for the liquidation, including rent, electric, gas, telephone, and water; and

   (ii) security for the Receivership Property; and

   (iii) taxes of any kind or nature accruing after the Receivership required to be paid on Receivership Property by statutes of the United States or any state political subdivision or any governmental agency; and

   (iv) such payroll expenses, including salary and any accompanying payroll taxes as are required to maintain appropriate accounting records and to do those things as are set forth in this Order; and

   (v) services of accountants as the Receiver shall require to maintain the accounting records, comply with governmental tax filing requirements and do those things which are set forth in this Order; and

   (vi) necessary insurance and bond premiums as provided for herein; and

   (vii) legal counsel for the Receiver, as set forth above; and

   (viii) for such other expenses as shall be necessary from time to time to maintain and preserve the Receivership Property in the Receiver's sole discretion, within the approved budget.

17. Any and all monies advanced by the Bank shall become expenses of administration of the Receivership Estate, shall be added to and become a part of monies due and owing to the Bank, shall be refundable directly to the Bank and shall be secured by the

Receivership Property.

18. Any refundable balances on utility deposits, unearned or insurance premiums advanced by the Bank shall be refundable directly to the Bank.

19. The Receiver is prohibited from paying any unsecured, pre-receivership debt of Defendants Pro-Onsite and POS related to the Receivership Property without a prior order of this Court authorizing any such payments: provided, however, that this provision shall not apply to pre-receivership debts for insurance and/or utilities.

20. No legal actions, administrative proceedings, self help remedies, or any other acts or proceedings including, without limitation, any lessee's right to distrain or terminate any lease, or under any Federal, State or Municipal Statute, Regulation or By-Law concerning the environment shall be taken or continued against the Receiver, Defendants Pro-Onsite and POS, the Receivership Property or the assets of the Receiver or any part thereof without leave of this Court first having been obtained.

21. The Receiver is authorized to take any other actions upon notice and hearing that the Receiver deems necessary to protect the Receivership Property.

22. Upon subsequent application and Order of the Court, the Receivership shall be terminated and the Receiver hereunder discharged.

23. The Receiver shall have full and unrestricted access to the Receivership Property and Defendants Pro-Onsite, POS and Brunsman are directed to take all the steps necessary to give the Receiver access to the Receivership Property, access to all information pertaining to the Receivership Property, and to give him keys to each of the facilities.

24. On or before the twentieth day of the succeeding month, the Receiver shall file

with this Court and furnish to the Bank and the Defendants, a statement of receipts and disbursements incurred during the preceding month. Such statement shall be in reasonable detail so that anyone reviewing the statement can determine the object of the disbursement and the source of the receipt.

      25.      The Receiver and his company, Moglia Advisors, shall be immune, as an officer of this Court, for any personal liability of any kind arising from, caused by or in any way connected with exercising any rights or performing any duties in his capacity as Receiver.

      26.      Defendant Brunsman is hereby enjoined and restrained from:

- interfering in any manner with the Receiver's duties set forth herein;

- dissipating, secreting, damaging or otherwise impairing the assets of Pro-Onsite and POS;

- communicating with or contacting any customers, creditors and/or account debtors of Pro-Onsite and POS, without the express permission of the Receiver;

- filing or causing to be filed any UCC termination statements with respect to the Bank's liens and/or any other liens that encumber the Receivership Property as of the date hereof;

- directly or indirectly transferring, selling, encumbering, receiving, changing, pledging, assigning, liquidating, incurring debt upon or otherwise disposing of, or withdrawing, any funds, accounts or other assets owned by, controlled by, held for the benefit of, or in the possession of Defendants Pro-Onsite and/or POS, including but not limited to any and all accounts at any financial institution in the name of Defendants Brunsman, Pro-Onsite and POS, or any one or more of them, and any and all accounts at any financial institution in which any one or more of Defendants Brunsman, Pro-Onsite and POS have signatory authority or a beneficial interest;

- attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement with or otherwise affecting any of the Receivership Property;

- directly or indirectly destroying, mutilating, concealing, altering or disposing of in any manner, any papers, photographs, emails, films, recordings, memoranda,

books, records, accounts, communications, and any retrievable information in computer storage, in the possession, custody or control of Defendants Brunsman, Pro-Onsite and/or POS, that refer to or relate to the business operations, assets, and/or financial condition of Defendants Brunsman, Pro-Onsite, and/or POS. Such documents include but are not limited to, handwritten notes, memoranda, emails, and any other documents or information, whether stored electronically or in "hard copy." In addition, Brunsman is prohibited from facilitating or assisting the destruction, alteration or compromise of any evidence that is in the possession, custody or control of third parties; and

- directing any other individual to take any of the actions described above.

27. Until further Order of this Court, any bank, financial or brokerage institution or other person or entity holding any such funds or other assets referred to in this Order, in the name of, for the benefit of, or under the control of Defendants Pro-Onsite, and/or POS, and which receives actual notice of this Order, shall hold and retain within its control and prohibit the withdrawal, removal, transfer, disposition, pledge, encumbrance, assignment, set off, sale, liquidation, dissipation, concealment, or other disposal of any such funds or other assets, exhibit by the Receiver appointed herein, and shall notify the Court and counsel for the Plaintiff of the existence, nature and amount of any such funds or other assets.

28. To effectuate the provisions of this Order, the Plaintiff or the Receiver shall cause this Order to be served on any bank, savings and loan, broker-dealer or other financial or depository institution either by United States mail or by facsimile as if such service were personal service, in order to restrain and enjoin any such institution from disbursing funds or anything else of value, directly or indirectly, to or on behalf of Defendants Pro-Onsite or POS or to persons or entities under their control.

29. To effectuate the provisions of this Order, Defendants Brunsman, Pro-Onsite and POS shall, no later than January 26, 2010, identify to the Plaintiff and the Receiver all accounts,

including bank accounts, brokerage accounts, retirement accounts, and/or trust accounts, in which that defendant has an ownership or beneficial interest.

30. The Court finds that Plaintiff need not give security in this case.

31. A preliminary injunction hearing is hereby set in this matter for January 26, 2010, at 1:00 p.m.

32. This Order may be modified or amended, upon motion by any party-in-interest, and upon notice and hearing.

Dated at Cincinnati, Ohio this 13th day of January, 2010.

IT IS SO ORDERED.

                                                      ___s/Susan J. Dlott_____
                                                      Chief Judge Susan J. Dlott
                                                      United States District Court